1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

| | |
|---|---|
| ROBERT GARRISON,<br><br>        Plaintiff,<br><br>    v.<br><br>WASHINGTON STATE DEPARTMENT OF<br>CORRECTIONS, *et al*.,<br><br>        Defendants. | Case No. C05-5837 FDB/KLS<br><br>REPORT AND<br>RECOMMENDATION<br><br>**NOTED FOR:**<br>**February 15, 2008** |

15

16

17

18

19

20

21

22

23

24

Before the Court is Defendants' motion seeking summary dismissal of Plaintiff's claims. (Dkt. # 97).  Plaintiff alleges that his First, Fifth, Eighth and Fourteenth Amendment rights were violated when Defendants wrongfully rejected his mail, tampered with his mail, forced him to live in unclean conditions, denied him food and medication, and denied him access to the courts.  (Dkt. # 10).

In support of their motion, Defendants submit the Declarations of Karen Thompson, James Tucker, Doug Waddington, Edward Hansmeyer, and Devon Schrum (Dkt. # 97, Exh.1-5, with attachments).  Plaintiff has not responded to Defendants' motion, although the Plaintiff was previously granted an extension of time and has had ample time to respond to Defendants' motion.[1] Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the

25

26

27

---

[1]*See* Dkt. # 111.  Defendants' motion for summary judgment has been on file since August 2007.  *See also*, Dkt. # 119, Court's Order denying Plaintiff's motion for 30-day stay of proceedings.

28

REPORT AND RECOMMENDATION - 1

1   court as an admission the motion has merit.

2          After careful review of Defendants' motion, supporting evidence, the balance of the record,

3   and viewing the facts in the light most favorable to the Plaintiff, the undersigned recommends that

4   Defendants are entitled to summary dismissal of the claims against them.

5                                    **I. INTRODUCTION**

6          Plaintiff, Robert Ward Garrison, is in the custody of the Washington State Department of

7   Corrections (DOC) at Stafford Creek Corrections Center (SCCC) in the Intensive Management Unit

8   (IMU).  (Dkt. # 97, Exh. 1, Attach. A, p. 1).  Plaintiff was incarcerated at the Washington

9

10  Corrections Center (WCC) at the time of the events alleged in his Amended Complaint.  (Dkt. #

11  10).  Plaintiff brings this action under 42 U.S.C. § 1983, against DOC, WCC, Edward Hansmeyer,

12  Donald Edwards, Jim Flynn, Tracy Johnson, Julie Baker, Captain Tauscher, Carol Porter, Thomas

13  McIntyre and numerous John/Jane Does. *Id*.[2]  All of the individuals who have been served with

14  this lawsuit worked at WCC at the time of the events alleged in the Amended Complaint.

15                                **II. STANDARD OF REVIEW**

16

17         In examining Defendants' motion, the Court must draw all inferences from the admissible

18  evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d

19  1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material

20  fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving

21  party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex*

22  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

23         Once the moving party has met its burden, the opposing party must show that there is a genuine

24  issue of fact for trial. *Matsushita Elect. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87

25

26         _____

27         [2]Captain Tauscher and the John and Jane Doe Defendants have not been served with this
    lawsuit.

28  REPORT AND RECOMMENDATION - 2

(1986).  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

## III.  DISCUSSION

**A.      Dismissal of Defendant Tauscher and John and Jane Doe Defendants**

            Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service of the summons and complaint must be made upon a defendant within 120 days after the filing of the complaint.  Unless the plaintiff can show good cause for his failure to serve, the court shall dismiss the action without prejudice as to that defendant or shall extend the time for service.  Fed.R.Civ.P. 4(m).  In cases involving a plaintiff proceeding *in forma pauperis*, a United States Marshall, upon order of the court, shall serve the summons and complaint.  Fed.R.Civ.P. 4(c)(2).  "'[A]n incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint and . . . should not be penalized by having his action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform his duties.'" *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994).

            Where a pro se plaintiff fails to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint, the court's *sua sponte* dismissal of the unserved defendant is appropriate.  *Walker*, 14 F.3d at 1421-22.  A defendant must be served in accordance with Fed. R. Civ. P. 4 or there is no personal jurisdiction over that defendant. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (citation and footnote omitted).

REPORT AND RECOMMENDATION - 3

Plaintiff's Amended Complaint was filed on February 23, 2006.  (Dkt. # 10).  On March 1, 2006, the Court entered an order directing service of the Amended Complaint on the named defendants, including Defendant Taucher, via the U.S. Marshal Service.  (Dkt. # 13).  The U.S. Marshal served seven of the named defendants by mail, using the addresses supplied by Plaintiff.  (Dkt. # 15, 31, 32, 33, 34, 35, 36).  There is no indication that Defendant Taucher was ever served or that Plaintiff ever pursued service of this Defendant.  In addition, none of the John and/or Jane Doe Defendants were ever identified or served within 120 days of the filing of the Amended Complaint.

Thus, this Court does not have personal jurisdiction over these Defendants and it is recommended that Plaintiff's claims against these Defendants be dismissed without prejudice.

**B.    Washington's Three Year Statute of Limitations**

At the outset, the Court turns to Defendants' argument that Plaintiff's third claim (Dkt. # 10, pp. 17-34) and fourth claim (Dkt. # 10, pp. 34-39), must be dismissed as time-barred under Washington's three year statute of limitations.  RCW 4.16.080(2).  (Dkt. # 87, pp. 10-11).  Defendants argue that although Plaintiff first filed his proposed civil rights complaint on January 4, 2006[3] (Dkt. # 1), it was not accompanied by a motion to proceed *in forma pauperis*.  Plaintiff did not file a motion to proceed IFP until February 10, 2006.  (Dkt. # 4, 6).

Relying on Seventh Circuit authority, Defendants argue that the three year statute of limitations was tolled while this Court considered Plaintiff's motion to proceed *in forma pauperis*.  (Dkt. # 97, p. 10, *citing Williams-Guice v. Board of Educ. Of City of Chicago*, 45 F.3d 161, 165 (7th

_____

[3]Although the CM/ECF docket reflects a filing date of January 4, 2006, that is the date that the Court Clerk entered the proposed complaint on the Court's docket.  A review of the proposed complaint reveals that Plaintiff signed the pleading on December 26, 2005 and that it was received by the Court Clerk on December 29, 2005.  (Dkt. # 1).

REPORT AND RECOMMENDATION - 4

1  Cir. 1995) (*citing Brown v. J.I. Case Co.*, 756 F. 2d 48 (7th Cir. 1985)).  Because Plaintiff did not

2  file his application to proceed IFP until February 10, 2006 and the majority of the events of which

3  he complains occurred in early January 2003, Defendants urge this Court to dismiss all of Plaintiff's

4  claims that arose more than three years prior to February 10, 2006.

5

6          However, the Ninth Circuit informs us that a pro se complaint by a prisoner alleging civil

7  rights claims is constructively filed on the date it is delivered to prison officials to forward to the

8  clerk of the court, despite any subsequent rejection by the clerk for noncompliance with a provision

9  of the local rules.  *See, e.g., United States v. Dae Rim Fishery Co., Ltd*., 794 F.2d 1392, 1395 (9th

10  Cir. 1986); *Ordonez v. Johnson*, 254 F.3d 814, 816 (9th Cir. 2001) (per curiam).   In addition, the

11  payment of filing fees is not to be given jurisdictional effect.  *See, e.g., Citron v. Union Pac. R. Co.*,

12  813 F.2d 917, 920 (9th Cir. 1987).

13

14          Therefore, for purposes of this summary judgment motion, the undersigned concludes that

15  Plaintiff's complaint was constructively filed on December 29, 2005, when it was date-stamped by

16  the Court Clerk.[4]  (Dkt. # 1).   As noted by Defendants, the majority of the events of which Plaintiff

17  alleges in Counts Three and Four of his Amended Complaint occurred in early 2003.  Thus, his

18  claims were timely brought.

19

20  **C.          Stating a Claim Under 42 U.S.C. § 1983**

21          To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the

22  defendant must be a person acting under color of state law, (2) and his conduct must have deprived

23  the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United

24  States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element

25

26  _____

27          [4]Plaintiff's Complaint is dated December 26, 2005.  However, the Court has no proof of
when it was delivered to prison officials to forward to the Court Clerk.

28  REPORT AND RECOMMENDATION - 5

of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id*. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

### 1.    The Approved Vendor List

Plaintiff alleges that Defendants wrongfully rejected several gift publications ("Prisoner's Guide to Survival," "Prisoner's Handbook," and "Publications Catalog") because he did not use funds from his prison account, a rejection that is contrary to stated prison regulation and a violation of his First Amendment rights. (Dkt. # 10, p. 7-13). Plaintiff alleges that Defendants have failed in their duty to implement the amended publication and subscription mail policy 450.100 (VII)(B), in light of *Crofton v. Roy*, 170 F.3d 957 (9th Cir. 1999). *Id*. at 7. Plaintiff also alleges that WCC's use of an approved vendor list, which allows purchases from limited sources, is an unfair

REPORT AND RECOMMENDATION - 6

business and trade practice and a monopolization of the First Amendment rights of WCC's prison population.  (Dkt. # 10, pp. 10-11).

Offenders may receive property from specific outside sources,  including approved vendor catalog purchases. (Dkt. # 97, Exh. 3, Attach. A, WCC Field Instruction 440.00 Offender Personal Property).  This policy applies to WCC specifically and requires inmates to order items from an already approved list of vendors which include: Amazon.com; Harper Collins Publishers; Intercontinental Book Distributors; and Prison Legal News. *Id*.  The institution has a set list of vendors allowed to send items to inmates to ensure the safety and security of the institution. *Id*.  The purpose of the approved list it to limit the amount of contraband being smuggled into the institution. *Id*.  Family and friends may purchase items for the inmate; however, those items still need to be delivered by the approved vendor. *Id*.  Any products that are mailed by an unapproved vendor are rejected with a notice going to the inmate informing him of why the item was rejected.  (*Id*., Exh. 3, Attach. B, DOC Policy Directive 450.100, Mail for Offenders, p. 8).  The inmate has the opportunity to have that rejection appealed and ultimately overturned by the Superintendent's designee or the Regional Administrator. *Id*.

Defendants argue that Plaintiff's reliance on *Crofton v. Roe* is inapposite as that case stands for the proposition that the DOC may not prohibit an individual from receiving gift publications. (Dkt. # 97, p. 12).  In this case, Defendants submit, DOC did not prohibit Plaintiff's publications from entering the facility because they were gifts.  *Id*.  Whether they are paid subscriptions or gifts, they were prohibited because they were not from approved vendors.  (*Id*., Dkt. # 10, Exh. 2, 3).

A prisoner's right to receive publications from outside the prison should be analyzed in light of the *Turner* factors.  *See Morrison v. Hall*, 261 F.3d 896, 901-02 (9th Cir. 2001).  Thus, it must be determined whether the vendor policy at issue is reasonably related to a legitimate penological

REPORT AND RECOMMENDATION - 7

interest and the court should consider (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at minimal cost to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Frost v. Symington*, 197 F.3d 348, 354 (9th Cir. 1999).

Prison officials may not prohibit receipt of gift publications when sent directly from the publisher. *Crofton v. Roe*, 170 F.3d 959, 961 (9th Cir. 1999). Prison officials may not prohibit receipt of subscription publications even when sent bulk rate or third or fourth class mail. *Morrison v. Hall*, 261 F.3d 896, 901-02 (9th Cir. 2001); *Prison Legal News v. Cook*, 238 F.3d 1145-1151 (9th Cir. 2001).

However, courts have upheld prison regulations prohibiting inmates from receiving catalogs and non-subscription bulk mail. *Dixon v. Kirby*, 210 F. Supp. 2d 792, 799 (S.D. W.V. 2002), aff'd, 48 Fed. Appx. 93 (4th Cir. 2002)(prison regulation prohibiting catalogs); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (catalogs). In addition, in the Ninth Circuit, security interests and increased administrative costs to the prison (for alternative mail sorting procedures requested by the inmate) justify prison regulations regarding efficient processing of inmate mail. *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1995). In *Allen v. Wood*, 970 F. Supp. 824, 832 (1997), the Washington State Penitentiary's prison regulation on the restriction of catalogs was found to be constitutional as there were available alternative means of access to the catalogs.

WCC allows only certain vendors to mail books and other publications to offenders. (Dkt. # 97, Exh. 3, Attach. A, WCC Field Instruction 440.000 Personal Property for Offenders). The stated

1  policy for this limitation is to limit the contraband that may be mailed in from other vendors that are

2  unknown to WCC.  (Exh. 3).  Thus, Defendants argue, Plaintiff cannot show a limitation of his First

3  Amendment rights as he is still able to obtain the materials so long as he can obtain them from a

4  known vendor.  (Dkt. # 97, p.13; Dkt. # 10, Exh. 3).   Even if this were seen to be a limitation of

5  his First Amendment rights, Defendants argue that such a limitation is outweighed by the DOC's

6  legitimate penological interest in limiting the vendors that can send materials in to inmates as this

7  reduces the threat of contraband coming into the institution through unknown and untrustworthy

8  vendors.  (Dkt. # 97, Exh. 2).  The impact of allowing any packager or vendor to send items into the

9  institution would require staff to thoroughly search every box or item shipped into the institution.  A

10  security risk would also be created as items such as razor blades, drugs or other contraband could be

11  hidden in books, magazines and other items which would create a threat to staff and other inmates.

12  *Id*.

13  

14  

15         The undisputed evidence reflects that WCC prohibited the publications because they were

16  not from approved vendors.  (Dkt. # 10; Exhs. 1, 2, and 3).   Plaintiff was advised that he could

17  request that a specific vendor be added to the approved list or request that an exception be made if a

18  particular book could not be found through the vendors on the approved list.  *Id*., Exhs. 2 and 3.  In

19  addition, Plaintiff may still exercise his right to obtain publications, he simply must have them sent

20  by an appropriately approved vendor or request an exception, so as not to create a security risk to

21  the institution.  Finally, Plaintiff has failed to come forward with any readily available alternative to

22  the existing prison policy.

23  

24         Because the regulation regarding WCC's vendor policy is reasonably related to legitimate

25  penological interests, it is constitutionally valid.  Accordingly, the undersigned recommends that

26  summary judgment in favor of Defendants be granted.

27  

28  REPORT AND RECOMMENDATION - 9

**2.      Plaintiff's Eighth Amendment Claims**

**a.      Eighth Amendment Claim - Unsanitary Cell Conditions and Food**

Plaintiff claims that Defendants placed him in an unsanitary cell and withheld his food for two days.  (Dkt. # 10, pp. 17-32)

Plaintiff was transferred to the WCC IMU December 30, 2002.  (Dkt. # 97, Exh. 1, Attach. A, p. 2).  Plaintiff felt that the cell in which he was placed was unsanitary and sent several kites addressing the conditions of his cell.  (Dkt. # 10, p. 20).  When he did not receive a response, he covered his cell door window with kites on January 2, 2003, to "elevate the need for a response." *Id*.  He took the kites down to speak with Defendant Edwards. *Id*.  On January 2, 2003, the Plaintiff was infracted for interfering with staff members' ability to perform their duties because he continuously pressed the emergency call button without an emergency.  (Dkt. # 97, Exh. 1, Attach. A, p. 11).  On January 4, 2003, Plaintiff sealed off the air exhaust vents in his cell and spread his own feces on the walls of his cell with a shower shoe.   (Dkt. # 10, p. 22).  Plaintiff refused to clean his cell and because of this refusal, was not allowed to eat even though he had been provided with numerous opportunities to clean his cell. *Id*., pp. 22-31.  Plaintiff alleges that he was denied dinner on January 4, 2003 (*Id*., p. 24), breakfast, lunch and dinner on January 5, 2003, and breakfast on January 6, 2003, all because he refused to clean his cell.  *Id*., pp. 24-28.  Plaintiff alleges that on January 6, 2003, he was given a sack lunch.  *Id*. p. 28.

Staff would not open the cuff port on Plaintiff's cell to give him any legal materials or to feed him because of the biohazard created by spreading his feces all over his cell and for urinating on his door.  (Dkt. # 97, Exh. 2).  On January 6, 2003, Plaintiff was infracted for spreading his feces in his cell and urinating against the cell floor and refusing to clean up the mess.  (*Id*., Exh. 1, Attach. A, pp. 11).

REPORT AND RECOMMENDATION - 10

Defendant Hansmeyer testified that on January 2, 2003, Plaintiff covered his cell window with feces, making it impossible to see what was happening in his cell, creating a safety and security risk. (Dkt. # 87, Exh. 4, p. 1). Plaintiff wiped the feces off to demand his legal materials and then covered the window again with feces and spread feces all over his cell. *Id*. He continued to do this for many days. *Id*. He was given the opportunity to clean his cell but he refused to do so. *Id*. Defendant Hansmeyer declares further that when an offender is in a cell and is refusing to uncover his cell window or has spread his own feces on the wall, the safety and security of the institution is compromised as staff cannot know what an offender is doing in his cell. *Id*., p. 2. The offender may be denied food or other property because it is not safe for the staff to open the cuff-port door or the main door. *Id*. The offender may also be given a sack lunch for food. *Id*.

The testimony of James Tucker, a Correctional Specialist at WCC IMU, confirms that Plaintiff was reminded numerous times to uncover his cell window and to clean his cell, he refused to do so. (Dkt. # 97, Exh. 2, p. 3). Plaintiff was not provided with food, medications, or his legal materials because he had created a significant risk to the health and safety of the staff and other offenders living on the unit at the time. *Id*. Mr. Tucker does not recall Plaintiff making any requests for medical treatment during the time his cell was covered with feces. *Id*.

Where the conditions of confinement are challenged, as they are here, a plaintiff must show two things: (1) that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation, and (2) that the prison official(s) acted "with a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As to the first prong, it is well settled that prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. 825. However, there may be circumstances where the withholding of food will not rise to a constitutional violation. *See, e.g.,*

REPORT AND RECOMMENDATION - 11

*Freeman v. Berge*, 441 F.3d 543, 545 (7ᵗʰ Cir. 2006).  In *Freeman*, the plaintiff refused to properly

dress, uncover his face, or clean the blood and feces off his cell walls.  441 F. 3d at 545.  The Court

found that, generally, the plaintiff knew what was expected of him to receive his food, he failed to

comply with the requests, and he was reasonably denied food. *Id*.  As noted by the Court in

*Freeman*, "there is a difference between using food deprivation as a punishment and establishing a

reasonable condition to the receipt of food."  *Id*.  The situation is no different here.

Plaintiff claims that Defendants' conduct was cruel and unusual in that they refused to feed

him.  However, the undisputed evidence reflects that Plaintiff smeared his own feces on the walls of

his cell and then he refused to clean it up.   (Dkt. # 10, pp. 22-24).  He then created a security risk

by covering his cell window with kites and feces.  (Dkt. # 97, Exh. 2).  Although Plaintiff was

provided numerous opportunities to clean his cell and to allow staff members opportunities to open

his cell door without risk to their security, he refused to do so.  *Id.*   Plaintiff's justification in

dirtying his own cell in such a manner was that it was not clean enough to begin with and

Defendants had refused all of his previous requests to clean his cell.  (Dkt. # 20, pp. 22-23).

While it is clear that Plaintiff disagrees with the cleaning methods used at WCC, his

allegations that WCC's cleaning methods are insufficient are unsupported and based entirely on his

subjective observations. On the other hand, Defendants provided the following undisputed evidence

of WCC's policy regarding cleaning and disinfecting of cells by supervised porters:

> Generally, an inmate will not be placed in a dirty cell in the IMU, unless
> there are extraordinary circumstances, like a sudden influx of inmates into the IMU.
> This was not the case when the Plaintiff was transferred to the IMU at WCC -- his
> cell was clean before he was placed there. Currently offenders from Cedar Hall are
> assigned to IMU as porters to clean vacant cells and common areas. Those offenders
> are informed of their duties both verbally and in writing.  These porters are escorted
> and monitored by IMU staff personnel as they work. Under the direction of the staff
> on duty, the porters prepare to clean by organizing the required cleaning materials
> needed.   Cleaning materials include: cleaning rags; mop heads with handles; two
> mop buckets; spray bottles; plastic trash bags; toilet brushes; toilet paper; and clean

REPORT AND RECOMMENDATION - 12

bed roles.

   Prior to the vacated cell being cleaned, the escorting staff members will inspect the cell and search for any contraband that may have been left behind by the prior occupant. This includes inspecting the mattress and pillow case to make sure there are not any tears indicating hidden contraband. If such a defect is noted, then the staff member removes those items.  When the cell is cleared of contraband, the staff member will also perform function tests on the lights, emergency call button, sink and toilet.

   Once the staff member has completed his initial cell inspection he will ensure that the all porters are in compliance with universal precautions before cleaning the cell. This involves removing any trash, sweeping and dusting the floor, and cleaning the room fixtures. The offender will "spray down" the cell with Hepastat 256. Hepastat 256 is a very strong cleaning agent which, when used, disinfects any areas which could be infected. The backside of the cell door, walls, metal sink and toilet area, metal bunk, metal seat stool and the metal countertop table are all sprayed with the substance. The porters also "spray down" the mattress and pillow cases.  When everything is wiped clean the offender will place a new bed role and cell bag on the metal counter top table. The porter will then mop the floor with diluted chemical disinfectant. When all cells have been cleaned and re-inventoried, a final inspection is conducted by the floor officer or the Unit Sergeant for accuracy. The staff member will advise the booth officer that the cell is ready to go and the booth officer will close the cell door.

(Dkt. # 97, Exh. 2).

   Viewing the evidence in the light most favorable to Plaintiff, the undersigned concludes that Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim regarding the conditions of his confinement be granted.

   **b.**   **Lack of Medical Care**[5]

   Plaintiff alleges that Defendant John and Jane Doe Officers and Nurses denied him his medications for his allergies, hypertension or neck pain. (Dkt. # 10, p. 24).  The first day he was denied medications was on January 4, 2003 and he began receiving his medications again on

---

   [5]Plaintiff's allegations regarding the denial of his medications are directed primarily at John /Jane Doe Defendants who, as noted above have not been named or served and over whom this Court has no jurisdiction.  The remaining Defendants offer their opposition to Plaintiff's claims and the Court has analyzed the summary judgment evidence.

REPORT AND RECOMMENDATION - 13

1   January 8, 2003.  (*Id.*, p. 31).

2       Deliberate indifference to an inmate's serious medical needs violates the Eighth

3   Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97,

4   104 (1976).  Deliberate indifference includes denial, delay or intentional interference with a

5   prisoner's medical treatment.  *Id*. at 104-5; *see also Broughton v. Cutter Labs*., 622 F.2d 458, 459-

6   60 (9th Cir. 1980).  To succeed on a deliberate indifference claim, an inmate must demonstrate that

7   the prison official had a sufficiently culpable state of mind.  *Famer v. Brennan*, 511 U.S. 825, 836

8   (1994).  A determination of deliberate indifference involves an examination of two elements: the

9   seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

10  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

11      First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer,* 511 U.S.

12  at 834.  A "serious medical need" exists if the failure to treat a prisoner's condition would result in

13  further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary

14  standards of decency.  *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at

15  1059.  Second, the prison official must be deliberately indifferent to the risk of harm to the inmate.

16  *Farmer*, 511 U.S. at 834.

17      An official is deliberately indifferent to a serious medical need if the official "knows of and

18  disregards an excessive risk to inmate health or safety." *Id.* at 837.  Deliberate indifference requires

19  more culpability than ordinary lack of due care for a prisoner's health. *Id.* at 835.  In assessing

20  whether the official acted with deliberate indifference, a court's inquiry must focus on what the

21  prison official actually perceived, not what the official should have known.  *See Wallis v. Baldwin*,

22  70 F.3d 1074, 1077 (9th Cir. 1995).   In other words an official must (1) be actually aware of facts

23  from which an inference could be drawn that a substantial risk of harm exists, (2) actually draw the

28  REPORT AND RECOMMENDATION - 14

inference, but (3) nevertheless disregard the risk to the inmate's health.  *Farmer*, 511 U.S. at 837-8.

Defendants argue that they were not deliberately indifferent to Plaintiff's well-being nor did they consciously disregard an excessive risk of harm to his health or safety.  (Dkt. # 87, p. 16). Rather, Defendants contend that Plaintiff created the very harm of which he complains.  *Id*.

The summary judgment evidence and Plaintiff's own Complaint reflects that the time period that Plaintiff was denied his medication was during the time that he had covered his cell with his own feces and then refused to clean it up.  (Dkt. # 20, pp. 22-24).  Plaintiff covered his cell window with kites and feces and refused to remove them, causing a threat to the safety and security of the staff.  (Dkt. # 97, Exh. 2).  Prison staff had no way of knowing what Plaintiff was doing in his cell or what threat he was posing.  *Id*.  Plaintiff refused to comply with orders to uncover his cell window or clean his cell.  *Id*.  A DOC employee will not open a cell door if the window is covered due to the incredible security risk of not know what may lie on the other side of the door.  *Id*.  In the face of Plaintiff's refusal to uncover his window, staff did not have an option but to wait for Plaintiff to comply with their orders.  *Id*.  Plaintiff was made aware of what it would take to receive his medication, *i.e.,* clean his cell, but he refused to do so.  *Id*.

In addition, the uncontroverted summary judgment evidence reflects that Plaintiff had an emergency call button and if he was having any immediate medical concerns, he could have pressed the button to gain the attention of staff. (Dkt. # 87, Exh. 2).  Plaintiff did not do so.  *Id*.  Neither does Plaintiff allege that he was denied any medical treatment for any immediate medical need. (Dkt. # 20).  Absent any medical complaints, he cannot show that the DOC employees were deliberately indifferent to any medical concerns.

Although Plaintiff alleges that he suffered from swollen eyes, coughing, congestion and irritation in his throat, he does not allege and offers no evidence that he ever reported these

REPORT AND RECOMMENDATION - 15

symptoms to prison staff.  Attached to Plaintiff's Complaint are various medical records indicating

that Plaintiff was seen by prison medical staff at various times for various reasons.  (Dkt. # 10, Exh.

23-27).  These records reflect that Plaintiff was seen and treated for medical concerns that he

brought to the attention of DOC medical staff.  They do not support a claim that Plaintiff suffered

from any acute medical condition caused by the condition of his confinement or that Plaintiff was

denied medical treatment.

After viewing all the evidence in the light most favorable to Plaintiff, the undersigned

concludes that Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim

for denial of medical care be granted.

### 3.        Meaningful Access to the Courts

Plaintiff alleges that as a result of Defendants' refusal to allow him access to his legal

materials and the law library, he missed two court imposed deadlines of January 6, 2003 and

January 21, 2003.  (Dkt. # 20, Exh. 28-31).   Plaintiff also alleges that an audio tape exhibit from his

state court case, which he placed in the mail in support of his habeas petition, was removed from the

mail by a DOC employee.[6]  (*Id.*, pp. 13-14).

Referring to Plaintiff's exhibits and an independent review of this Court's dockets, the

Court has identified the cases referred to in Plaintiff's Amended Complaint as a civil rights claim

against the City of Seattle (Case No. C01-224RSL) and habeas case (Case No. C02-579RSM).   The

---

[6]There is some disagreement as to the number of kites and/or grievances Plaintiff filed
relating to his request for law library access.  (*See* Dkt. # 97, Exh. 5, Attach. A, Initial Grievance
filed by Robert Garrison, Log I.D. # 0300968 and Dkt. # 10, p. 37).  Plaintiff claims that he sent
more kites than what are reflected in Defendants' record.  In addition, Plaintiff alleges that on at
least one occasion, his legal materials were taken from him in retaliation, but were returned the next
day. (Dkt. # 10, p. 39).  For purposes of this summary judgment motion, the Court assumes that he
was denied access.  The issue here is whether that denial caused an actual injury.

REPORT AND RECOMMENDATION - 16

1983 case was dismissed without prejudice on May 2, 2002 pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Dkt. # 41, 42).  Plaintiff's petition for writ of habeas corpus was dismissed without prejudice for failure to exhaust administrative remedies on May 16, 2003.  (Dkt. # 66).

The touchstone of an access to courts claim is whether the access to courts program provides inmates with "meaningful access to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This is not a bright line test and an access to courts program is "evaluated as a whole to ascertain its compliance with constitutional standards." *Bounds v. Smith*, 430 U.S. 817, 832 (1997). In matters such as development of access to courts programs, courts are to defer to the expertise of prison officials. *Lewis*, 518 U.S. at 361 (prison officials are entitled deference with regard to access to courts programs). Inmates' rights of access to the courts are not unlimited, and the time, place and manner in which they are provided can be regulated. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985) (discussing access to the law library).

Before an inmate can bring a lawsuit for an access to courts violation, the inmate must have standing. In *Lewis*, the Supreme Court held that to have standing to bring an access to courts claim, an inmate must allege both that he was denied access to legal materials or advice and that this denial harmed his ability to pursue non-frivolous legal action, that is, the inmate must show actual injury. To show actual injury the inmate must, for example, show that because of the inadequate library facilities or because of the prison regulations governing access and use of the library facilities, the inmate was unable to file a complaint or that the inmate lost a case because the inmate could not timely file critical pleadings. *Id*. at 351

Plaintiff's original deadline to file his traverse in C02-579RSM was January 21, 2003, but his traverse was filed and accepted by the Court on March 13, 2003 (Dkt. # 64)  The Court also requested an additional answer from Plaintiff after addressing the issue of whether Plaintiff had

sought post-conviction review.  (Dkt. 54, 64).  In addition, in January 2003, when Plaintiff claims

that he was being denied access to the courts by the Defendants in this case, he filed an emergency

motion for injunctive relief (Dkt. # 42), motion for justice (Dkt. # 44) and an objection and reply to

respondent's response to Plaintiff's motion for justice in C02-579RSM.  (Dkt. # 46).

        The docket in Plaintiff's habeas case also reflects that he filed a motion asking the Court to

search for an audiotape he claims to have sent the Court in March of 2003, when he filed his

traverse.  (Dkt. # 74).  A search of the court files revealed that there was no audiotape in the file and

no proof that the tape was received by the Court.  The Court noted that language in Plaintiff's

traverse stating "[I]t can now be compared to the audio tape" does not show that the tape was filed

with the Court and that the statement appears in a paragraph describing Plaintiff's unsuccessful

efforts to obtain the tape and files from the trial court.  *Id.*.  Finally, it was noted that Plaintiff's

motion to the trial court to obtain the tape was denied.  *Id.*.

        Finally, a transcription of the tape, Exhibit # 287, was included in Plaintiff's filings, and a

copy of that transcript was returned to Plaintiff on November 16, 2004. (Dkt. # 79).

        Accepting Plaintiff's allegations and averments as true, the undersigned concludes that there

is not sufficient evidence to support a claim of denial of access based on Plaintiff's allegations that

his habeas claim was dismissed for failure to meet deadlines or because someone from DOC

intentionally removed the audio tape from his outgoing legal mail. As this Court's independent

review of its records reveals, Plaintiff's federal habeas was not dismissed for Plaintiff's failure to

comply with any court imposed deadlines or failure to present adequate evidence of his innocence.

Rather, Plaintiff's federal habeas corpus case was dismissed for failure to exhaust state court

remedies.  (Dkt. # 66, in Case No. C02-579RSM).

        In addition, Plaintiff's allegation that someone from DOC removed the tape is speculative

REPORT AND RECOMMENDATION - 18

and without evidentiary support.  Plaintiff only speculates that "someone" removed the audio tape

from the mail and that it must have been a DOC employee.  *Id.*, p. 14.  This speculation is too

tenuous to show a valid claim under 42 U.S.C. §1983.  "A plaintiff's belief that a defendant acted

from an unlawful motive, without evidence supporting that belief, is no more than speculation or

unfounded accusation about whether the defendant really did act from an unlawful motive."

*Carmen v. San Francisco Unified School Dist.*, 237 F,3d 1926, 1028 (9th Cir. 2001).

Accordingly, the undersigned recommends that Defendants' motion for summary judgment

on Plaintiff's access to courts claim be granted.

### 4.    Plaintiff's Claims of Fifth and Fourteenth Amendment Violations

Plaintiff alleges generally that Defendants violated his Due Process and Equal Protection

rights in conjunction with his claims that an audio tape was removed from his outgoing legal mail

(Dkt. # 10, pp. 16, 42) and that Defendants intentionally interfered with his access to courts by

denying him access to his legal materials and the law library. *Id.*, pp. 40, 43.   Defendants argue that

Plaintiff has failed to affirmatively identify the specific rights he claims have been violated.  (Dkt. #

97, p. 18).  The Court agrees.  Vague and mere "[c]onclusionary allegations, unsupported by facts"

are not sufficient to state a claim under 42 U.S.C. § 1983. *Jones v. Community Development*

*Agency,* 733 F.2d 646, 649 (9th Cir. 1984);  *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992).

Plaintiff has simply added the conclusory language that the conduct of Defendants is in violation of

these amendments in relation to his substantive First Amendment access to courts claim with no

further pleading or evidence.  As noted above, Plaintiff admits that his legal materials were returned

to him  (Dkt. # 20, p. 39), and Plaintiff's allegation that "someone" from the DOC removed his tape

is simply to conclusory to support a claim.

There is also no evidence before the Court that Defendants acted with an intent to

discriminate against Plaintiff or that he was treated differently from other similarly situated inmates because he belonged to a protected class. *See, e.g., Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991).

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's claims for violation of his Fifth and Fourteenth Amendment claims be granted.

**D.      Sovereign Immunity for DOC and WCC**

Defendants DOC and WCC argue that Plaintiff's claims against them are effectively claims against the State which are barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution bars citizens from bringing lawsuits against states in federal courts. *See Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Absent an Act of Congress or state action expressly waiving Eleventh Amendment immunity, the Eleventh Amendment has consistently been applied to bar suits for damages against the state in federal court. In *Quern v. Jordan*, 440 U.S. 332 (1979), and *Edelman*, supra, the Supreme Court ruled that Congress did not intend to waive Eleventh Amendment immunity in 42 U.S.C. § 1983 actions. Where there is no state waiver, the Eleventh Amendment prohibits suits for damages against the state in federal court. The State of Washington has not waived the protections granted by the Eleventh Amendment. *Edgar v. State*, 92 Wn.2d 217, 595 P.2d 534 (1979).

The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant.  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).  Accordingly, Plaintiff's claims against the DOC and WCC are barred under the Eleventh Amendment and his Complaint against these Defendants should be dismissed as a matter of law.

**E.      Requests for Injunctive Relief and Qualified Immunity**

REPORT AND RECOMMENDATION - 20

1    Defendants argue that Plaintiff is not entitled to injunctive relief and that they are, in any

2    event, entitled to qualified immunity.  As the Court has determined that Plaintiff has not

3    demonstrated a violation of his constitutional rights, these issues need not be reached.  *See e.q.,*

4    *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

5

6                                    **IV.  CONCLUSION**

7    For the reasons stated above the Court should **GRANT** the motion for summary judgment of

8    Defendants (Dkt. # 121).  A proposed order accompanies this Report and Recommendation.

9    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

10   the parties shall have ten (10) days from service of this Report and Recommendation to file written

11   objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

12   objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time

13   limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on

14

15   **February 15, 2009**, as noted in the caption.

16   DATED this 28th  day of January, 2008.

17

18

19                                              Karen L. Strombom

20                                              United States Magistrate Judge

21

22

23

24

25

26

27

28   REPORT AND RECOMMENDATION - 21